2020 DEC 17 PH 5: 43
BY _________


## IN THE SUPERIOR COURT OF GUAM

In Re:

INDIVIDUALS OR GROUPS OF
INDIVIDUALS QUARANTINED BY
DPHSS AS A RESULT OF EXECUTIVE
ORDERS AND DPHSS GUIDANCE
MEMORANDA

Superior Court Case No. <u>SP0206-20</u>

**DECISION AND ORDER**
**re C.I.A.**

On December 15, 2020, the Court held a hearing originally intended to address the Court's December 11, 2020 Order to Show Cause ("OSC") directed at DPHSS. The Court took no action on the OSC as the underlying Request for Hearing filed on December 10, 2020, by Ruel Valencia concerned outdated CDC guidance. As the science concerning COVID-19 is ever-evolving, it is not a fruitful use of the Court's time to discuss requests that DPHSS change its quarantine policies due to scientific developments unless the parties address the most updated recommendations issued by public health authorities such as the CDC.

Instead, at the December 15, 2020 hearing, the parties indicated they were prepared to address the issue of home assessments raised by Petitioner C.I.A in her December 14, 2020 Request for Hearing. The following facts are undisputed:

1. C.I.A. arrived on Guam on Sunday, December 13, 2020, and, as of the hearing date, C.I.A. was on her second day of government facility quarantine.

2. C.I.A. argues that her home is suitable for home quarantine and that she is willing to abide by DPHSS' home quarantine policies.

3. C.I.A. claims that she has requested DPHSS provide her a home assessment.

4. DPHSS believes it is following prior Court orders, which did not require it to perform home assessments until after the sixth day and if a person refuses a COVID-19 test.

5. If she remains in the government facility, C.I.A. intends to take a COVID-19 test as offered on the sixth day.

The Court recently addressed DPHSS's obligation to provide a home assessment to those quarantined in a government facility. In its December 11, 2020 Order Clarifying Home Assessments, the Court explained that any home assessment offered to a quarantined individual before a test being offered on day six is left to the discretion of DPHSS. During the December 15 hearing, the Court heard testimony from Chima Mbakwem regarding home assessments. Mbakwem advised the Court that a home assessment concerns the suitability of the home; however, it does not address and cannot predict whether a person will comply with home quarantine or provide accurate contact information. Moreover, Mbakwem presented information that 7.8% of persons on home quarantine are unsuccessful (meaning that they cannot be contacted with the contact information provided to DPHSS) and 28.4% are non-compliant with DPHSS' home quarantine procedures (meaning that they can be contacted but are not home when DPHSS makes its monitoring checks).

In *Ikei v. DPHSS*, SP0138-20, DPHSS presumed that incoming travelers will not comply with home quarantine protocols. In its Findings of Fact and Conclusions of Law issued in that case, however, the Court rejected this presumption; the data demonstrated that most persons did comply. The Court also found that a home quarantine is a less restrictive means of quarantine than a government facility quarantine,[1] and that home quarantine can be done safely if DPHSS

---

[1] The Court rejects DPHSS' argument that a home quarantine is just as restrictive as a government quarantine. Four walls are not the sole hallmark of a restrictive environment. The Court has heard from numerous quarantined individuals who wish to be in their own homes with more reliable internet access to connect with work and school. There has also been at least one individual whose dietary restrictions were not respected by DPHSS, leading to her being able to eat only one meal a day. Other individuals have sought to be at home for religious reasons. It is

performs an assessment in which it has assurances of that person's compliance. At the December 15 hearing, it was apparent that DPHSS has not considered taking the steps to verify the accuracy of home addresses or phone numbers or to check on references--all of which seem to be reasonable ways to gauge a person's potential rate of compliance with home quarantine protocols. Since DPHSS has not taken those steps, it is not clear whether making these additional inquiries during home assessments are beyond its operational capacity.[2]

The Court finds that no further clarification is needed to its December 11, 2020 Order Clarifying Home Assessments. As stated in that Order, in instances in which a traveler seeks to transfer to home quarantine prior to a test on the sixth day,[3] DPHSS has the discretion to set the criteria to determine whether a home and an individual are suitable for home quarantine. DPHSS is again encouraged to conduct a home assessment in the present instance if it has the resources to do so. If it has such resources, it must conduct a home assessment of C.I.A. and transfer her to home quarantine if she passes the assessment.

---

without question that a government quarantine in which individuals are guarded by the National Guard, forced to eat food they did not select, and disconnected from their jobs and schools, is immensely more restrictive than home quarantine.

[2] DPHSS says that it has a compliance team of ten to twelve individuals which monitor over 600 people currently.

[3] DPHSS complained at the hearing that an individual who takes a PCR test on day six must be released as soon as a negative result is received regardless of the suitability of the individual's home. The Court reminds DPHSS that its proffered evidence in *Ikei* demonstrated that a PCR test is 99% accurate when taken on day six. The Court also notes that the CDC recently updated their recommended quarantine time. According to the CDC, "when diagnostic testing resources are sufficient and available quarantine can end after Day 7 if a diagnostic specimen tests negative and if no symptoms were reported during daily monitoring. The specimen may be collected and tested within 48 hours before the time of planned quarantine discontinuation (e.g., in anticipation of testing delays), but quarantine cannot be discontinued earlier than after Day 7. With this strategy, the residual post-quarantine transmission risk is estimated to be about 5% with an upper limit of about 12%." *Options to Reduce Quarantine*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Dec. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-options-to-reduce-quarantine.html. This indicates that an asymptomatic individual that receives a negative PCR test result taken within forty-eight hours of their seventh day of quarantine poses an insubstantial risk of transmitting COVID-19.

SO ORDERED this 17th day of December 2020.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

Appearing Attorneys:
Assistant Public Defender John Morrison, Public Defender Services Corporation, for C.I.A.
Deputy Attorney General James L. Canto, II and Assistant Attorneys General Joseph A.
        Perez and Janice Camacho for Respondent Department of Public Health and Social
        Services